AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>547 W. Franklin Street, Troy, Ohio (including all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles) | ) ) ) ) ) ) Case No. 3:18 mj 516 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of Controlled Substances |
| 21 U.S.C. 846 | Conspiracy to Distribute Controlled Substances |
| 18 U.S.C. 1956 | Money Laundering and Conspiracy to Commit the Same |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Austin M. Roseberry, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-16-18

*Judge's signature*

City and state: Dayton, Ohio       Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

Austin M. Roseberry, a Special Agent (S/A) of the Drug Enforcement Administration, United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

### INTRODUCTION

1. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. I am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed with the DEA since July of 2012. I attended the DEA Academy which consisted of approximately 20 weeks of training in conducting federal drug trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since May of 2017.

3. Since the time of my assignment with the DEA, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

4. Along with other agents and task force officers of the DEA and other agencies, your Affiant is currently involved in an investigation into a Drug Trafficking Organization (DTO) regarding the distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, as well as money laundering and conspiracy to do the same, in violation of Title 18, United States Code, Section 1956. This Affidavit is submitted in support of an Application for a Search Warrant authorizing the search of the following premises, more particularly described in Attachment A, incorporated herein by reference, for the items described in Attachment B, incorporated herein by reference: **547 W. Franklin Street, Troy, Ohio** (hereinafter referred to as the "**TARGET LOCATION**").

5. As outlined below, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substance and conspiracy to do the same), and Title 18, United States Code, Section 1956 (money laundering

1

and conspiracy to do the same) are being committed, and that evidence, fruits, and instrumentalities of these violations, as well as contraband, as set forth more fully in Attachment B, is presently located at or in the **TARGET LOCATION**.

6. Affiant is familiar with the facts and circumstances described herein and makes this affidavit based upon personal knowledge derived from Affiant's participation in this investigation, conclusions Affiant has reached based on Affiant's training and experience, and upon information Affiant believes to be reliable from the following sources:

   A. Oral and written reports about this investigation and other investigations, which Affiant has received from federal agents and agents from state and local law enforcement agencies;

   B. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to Affiant either directly or indirectly;

   C. Information developed from cooperating sources;

   D. Public records;

   E. GPS location data received from a court-authorized search warrant.

The information contained in this Affidavit is either personally known by Affiant or relayed to Affiant by other law enforcement officers involved in this investigation. This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the requested search warrant.

## FACTS SUPPORTING PROBABLE CAUSE

7. Your Affiant submits, based on the facts below, that there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substance and conspiracy to do the same), and Title 18, United States Code, Section 1956 (money laundering and conspiracy to do the same) are being committed by Priscila FUENTES-Negrete, Cody Boyd, and others, and that evidence, fruits, and instrumentalities of these violations, as well as contraband, is presently located at or in the **TARGET LOCATION**.

8. On April, 18, 2018, a Hancock County, Indiana, Sheriff's Deputy conducted a traffic stop of a Silver 2007 Cadillac CTS, displaying Ohio license plate HJZ 4001(FUENTES VEHICLE 1), which was travelling eastbound on I-70 near mile marker 108 in Hancock County, Indiana. The Deputy reported the operator of FUENTES VEHICLE 1, Priscila FUENTES-Negrete, was following a vehicle too closely, which is a moving violation in Indiana. The Deputy reported that upon approaching the vehicle during the traffic stop, the Deputy smelled a strong odor of marijuana with the windows of the vehicle rolled up. The Deputy encountered three occupants in FUENTES VEHICLE 1: FUENTES- Negrete (the driver), Cody Boyd, the front seat passenger, and Brandon Boyd, the rear passenger. A subsequent probable cause search of the vehicle resulted in the seizure of two handguns, two baggies of suspected marijuana, a pill

2

bottle containing marijuana, and drug paraphernalia. FUENTES-Negrete and B. Boyd were arrested and charged with possessing handguns without a license and possession of marijuana, both misdemeanors in the State of Indiana. C. Boyd was charged with a felony for being a felon in possession of a handgun and with a misdemeanor for marijuana possession.

9. During mid-April 2018, Homeland Security Investigations (HSI) Tucson, AZ (hereinafter collectively referred to as "Investigators") received information regarding an Ohio-based Drug Trafficking Organization (DTO), which indicated an individual only known as "Diego" was seeking a source of supply of narcotics from the Tucson, AZ area. Through various investigative techniques, investigators contacted the DTO and negotiated the sale of five kilograms of cocaine to Diego for $100,000. Under the terms of the sale negotiated, an initial $20,000 was due up-front from Diego prior to the delivery of the narcotics. The remaining payment amount was to be due upon arrival of the narcotics the following week in Ohio.

10. On April 30, 2018, at 7:37 A.M., an undercover investigator received a text message from phone number 937-478-6968. In the text message received, a subject self-identified as Diego's wife ("Luciana") explained that she needed the bank account information to make the deposit of the $20,000 up-front payment. Investigators, using a Confidential Informant (hereinafter referred to as "CI") who was introduced to Luciana as the undercover investigator's brother, gave specific bank account information to Luciana. The undercover investigator responded to Luciana to confirm that the CI provided the bank information. Luciana confirmed she received the bank information from CI and that Luciana was working on the deposits.

11. On April 30, 2018, at 3:21 P.M., investigators received a telephone call from phone number 937-478-6968, during which Luciana inquired if the deposits that she made were received. The investigator confirmed with Luciana that the funds were received.

12. On April 30, 2018, HSI Tucson investigators informed HSI Cincinnati investigators that HSI Tucson investigators had received three separate deposits, all under $10,000 for a total of $20,000 into an HSI undercover account. The depositor was purported to be Luciana.

13. On May 1, 2018, at 10:09 A.M., investigators received a telephone call from phone number 937-478-6968, during which Luciana inquired about the status of the narcotics delivery. Luciana indicated that she expected the narcotics to depart from Arizona the same week that the deposit was made. Investigators advised delivery would be the week of May 7, leaving Arizona on the weekend. During the conversation, the Spanish words "ropa" (clothes) and "camisetas" (shirts) were used to refer to the narcotics.

14. On May 1, 2018, at 2:49 P.M, investigators received a telephone call from phone number 937-283-4949, from Diego. Diego told investigators that Diego received a call from his wife (Luciana) regarding a delay with the product. Diego stated that he expected to have the "camisetas" in town for the "players" the week of April 30, 2018. An undercover investigator explained that there was a delay because Luciana never traveled to Tucson to meet as planned. Diego stated that he could purchase product every two weeks and was looking for a

consistent source of supply. Diego asked if the investigators' brother (the CI) told investigators how many "camisetas" Diego was looking to purchase. Investigators confirmed the amount as five (five kilograms of cocaine). Diego acknowledged, and then stated that he will take seven instead and guaranteed that he had the money ready for the purchase. Diego explained that the deposit was made because they (Diego) are serious about the work. Diego told investigators to keep his wife posted on the status. Diego also asked investigators if they understood his (Diego's) situation. Investigators confirmed, acknowledging that investigators are aware that Diego is in prison.

15. On May 3, 2018, at 11:36 A.M, investigators sent a text message to Luciana at 937-478-6968 and advised that everything is on schedule. Luciana acknowledged the text message, asking for updates as they come.

16. On May 3, 2018, HSI Cincinnati investigators served HTM Area Credit Union, 847 West Main Street, Troy, Ohio 45373, with an Ohio Organized Crime Investigations Commission (OOCIC) Criminal Subpoena requesting information related to the deposit made to HSI Tucson's undercover bank account, as discussed in paragraphs 10, 11, and 12, above.

17. HTM provided investigators with information regarding an $8,000.00 wire transfer that occurred on April 30, 2018. HTM identified an HTM Area Credit Union member, Priscilla FUENTES, as the subject who initiated the transfer of $8,000.00 from an HTM account to an account identified as the undercover bank account. FUENTES-Negrete's account had a listed address of the **TARGET LOCATION**, and a listed phone number as 937-552-6935. Investigators were also provided video surveillance footage of the transaction. FUENTES-Negrete was identified on the video surveillance as the person who initiated the transaction.

18. Investigators conducted a database query for information regarding phone number 937-552-6935, which was listed on the HTM account. Database results revealed the telephone number subscriber as "P. FUENTES Negre."

19. Video surveillance shows that, at the time of the wire transfer at HTM, FUENTES utilized a White 1997 Cadillac Deville, displaying Ohio license plate GZE 5545 (FUENTES VEHICLE 2). A database query revealed Ohio registration GZE 5545 is assigned to a 1997 White Cadillac registered to FUENTES-Negrete at the **TARGET LOCATION**. Database queries also revealed FUENTES-Negrete's address is listed as the **TARGET LOCATION** on her Ohio's Driver's License.

20. On May 7, 2018, investigators conducted surveillance of the **TARGET LOCATION**, and observed FUENTES VEHICLE 1 and FUENTES VEHICLE 2 parked near the residence.

21. On May 8, 2018, your Affiant queried public records databases (Thomson Reuters) which revealed that FUENTES VEHICLE 1 and FUENTES VEHICLE 2 were registered in the State of Ohio on April 4, 2018, and February 2, 2018, respectively. FUENTES

4

VEHICLE 1 and FUENTES VEHICLE 2 were both registered to FUENTES at the **TARGET LOCATION**.

22. On May 8, 2018, the Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, issued two tracking warrants authorizing investigators to install and monitor GPS tracking devices on FUENTES VEHICLE 1 and FUENTES VEHICLE 2.

23. On May 9, 2018, at approximately 2:30 a.m., investigators observed FUENTES VEHICLE 1 parked on the street in front of the duplex located at 1203/1205 Heritage Drive, Troy, Ohio. Investigators know 1205 Heritage Drive to be the residence of Cody BOYD, an associate of Priscila FUENTES-Negrete who was present with Priscila FUENTES-Negrete during the traffic stop in Indiana referred to in paragraph 8.

24. At approximately 2:30 a.m., Investigators also observed the FUENTES VEHICLE 2 parked in the driveway of the **TARGET LOCATION**. Investigators also observed two trash cans sitting on the street in front of the curb at the **TARGET LOCATION.**

25. At approximately 3:13 a.m., Investigators approached the **TARGET LOCATION** to conduct a trash pull. Upon opening the lid to the trash can Investigators could immediately smell the odor of raw marijuana. Investigators obtained a white trash bag from the trash can.

26. At approximately 3:40 a.m., Investigators searched the white trash bag that was recovered from the trash can at the **TARGET LOCATION**. Investigators found 10 vacuum seal bags containing the odor of raw marijuana. Four (4) of the bags contained green plant residue. The word "Gorilla" was written on one of the bags. The word "Cookie" was written on two of the vacuum seal bags.

27. On May 9, 2018, at approximately 11:00 a.m. members of the DEA Dayton RO and HSI Cincinnati Office established surveillance in the area of Troy, Ohio in anticipation of Pricilla FUENTES-Negrete traveling to meet with a DEA Tucson Resident Office Task Force Officer (acting on behalf of the DEA in an undercover capacity) for the purpose of purchasing multiple kilograms of cocaine from the undercover Task Force Officer.

28. At approximately 10:25 a.m., on May 9, 2018, an investigator monitored the GPS location data for FUENTES VEHICLE 1, utilized by FUENTES-Negrete. At approximately 10:28 a.m., the investigator observed that FUENTES VEHICLE 1 left the area of 1205 Heritage Dr., Troy, Ohio, and began traveling surface streets. At approximately 11:08 a.m., the investigator observed that FUENTES VEHICLE 1 arrived at the Smartstop Self Storage located at 21 Kings Chapel Dr., Troy, Ohio.

29. At approximately 11:15 a.m., on May 9, 2018, an investigator established visual surveillance of the Smartstop Self Storage. Upon arrival, the investigator observed FUENTES VEHICLE 1 parked between the buildings of the storage unit, and observed FUENTES-Negrete and Cody Boyd standing near an open storage unit door. At approximately 11:46 a.m., the investigator observed FUENTES-Negrete enter the driver seat of FUENTES VEHICLE 1, and

5

Cody Boyd enter the passenger seat, then exit the storage unit lot. Members of DEA and HSI then conducted mobile surveillance FUENTES VEHICLE 1, as it traveled on surface streets until it reached 1205 Heritage Drive, Troy, Ohio, at approximately 12:15 p.m.

30. Upon arrival at 1205 Heritage Drive, an investigator observed FUENTES-Negrete remove an item from the trunk of FUENTES VEHICLE 1, then enter the residence with Cody Boyd. At approximately 1:10 p.m., the investigator, observed the garage door of 1205 Heritage Drive open, and observed FUENTES-Negrete pull a dark colored Infinity SUV, displaying Ohio license plate HDK2933, into the driveway. The investigator then observed FUENTES-Negrete remove a bag from FUENTES VEHICLE 1. At approximately 1:13 p.m., the investigator observed FUENTES-Negrete place the bag into the rear seat of the Infinity SUV. At approximately 1:14 p.m., the investigator observed FUENTES-Negrete exit the residence and enter the Infinity SUV. Simultaneously, the investigator observed Cody Boyd enter FUENTES VEHICLE 1. The investigator then observed both vehicles leave the residence traveling in tandem.

31. DEA and HSI investigators then conducted mobile surveillance of FUENTES-Negrete and Cody Boyd as they traveled in tandem along surface streets from 1205 Heritage Drive to arrive at Troy Memorial Stadium located at 151 W Staunton Rd, Troy, Ohio, at approximately 1:24 p.m. Upon arrival, an investigator observed an unknown person walk up to the Infinity SUV and remove the bag from the back seat. DEA SA Vill then entered the parking lot and observed an unknown teenage black female walking away from the Infinity SUV carrying a red duffle bag. SA Vill observed that the field appeared to be hosting a high school track meet.

32. At approximately 1:25 p.m., FUENTES-Negrete and Cody Boyd exited the parking lot. DEA and HSI investigators then continued to conduct mobile surveillance of FUENTES-Negrete and Cody Boyd as they traveled in tandem from Troy Memorial Stadium to Interstate 75 south. At approximately 1:58 p.m., HSI SA Brian Turk received a phone call from an HSI Tucson Special Agent, stating that FUENTES-Negrete had contacted the undercover Task Force Officer, and apologized for running late, explaining that she had to drop something off at the school, but was now on her way.

33. At approximately 2:05 p.m. Ohio State Highway Patrol (OSP) conducted a traffic stop on FUENTES-Negrete, while driving the Infinity SUV, on Interstate 75 south, at mile marker 38.4. During the traffic stop, a trooper located bulk U.S. Currency secreted in a cereal box located in the rear passenger floorboard of the vehicle. FUENTES-Negrete told the trooper that she had no knowledge that U.S. Currency was in the vehicle, and had no knowledge of to whom the U.S. Currency belonged. The currency was later officially counted and determined to be $122,450.00.

34. SA Vill observed that, at the time FUENTES-Negrete was stopped by the trooper, Cody Boyd continued to travel south on Interstate 75, then exited onto U.S. Route 123. Members of DEA then continued to monitor the GPS location of Cody Boyd as he drove FUENTES VEHICLE 1 around the area of the traffic stop until he parked at the Arby's located at 895 W Central Avenue, Springboro, Ohio.

35. At approximately 2:45 p.m. FUENTES-Negrete was released from the traffic stop by OSP. DEA conducted mobile surveillance of FUENTES-Negrete as she traveled surface streets from the traffic stop and ultimately arrived at the Cincinnati Premium Outlets located at 400 Premium Outlets Drive, Monroe, Ohio 45050.

36. At approximately 3:15 p.m., DEA SA Steven Lucas re-established visual surveillance of Cody Boyd in FUENTES VEHICLE 1. At approximately 3:21 p.m., SA Lucas observed a white female exit the passenger seat of FUENTES VEHICLE 1, and enter the driver seat of a red Suburban displaying Ohio license plate HJY7352. A law enforcement check of the Suburban's license plate showed it was registered to Kimberly Boyd. Upon viewing the driver's license photograph of Kimberly Boyd, SA Lucas immediately recognized her as the female he observed exiting FUENTES VEHICLE 1 and entering the Suburban.

37. At approximately 3:45 p.m., SA Lucas observed Kimberly Boyd exit the parking lot of Arby's driving the Suburban, and Cody Boyd exit the parking lot driving FUENTES VEHICLE 1. SA Lucas and members of DEA conducted mobile surveillance of Kimberly Boyd and Cody Boyd as they traveled in tandem from the Arby's until they met with FUENTES-Negrete at the Outlet Mall at approximately 3:58 p.m. DEA SA Dratt then observed FUENTES-Negrete, Cody Boyd, and Kimberly Boyd exit their vehicles, and meet in the parking lot near the Infinity SUV.

38. On May 21, 2018, investigators from the DEA Dayton Resident Office served the SmartStop storage facility with an administrative subpoena for a list of tenants at the storage facility. Members of the SmartStop storage facility supplied members of DEA Dayton with the requested tenant list. Your affiant noted the tenant list revealed Priscila FUENTES-Negrete was the listed tenant for unit number 5102. The tenant list produced the following information for FUENTES: Address: 547 W. Franklin Street, Troy, Ohio 45373 (**TARGET LOCATION**); Email: priscy124@icloud.com; Telephone: 937-552-6935; Unit Number: 5102.

39. During the weeks following the seizure of $122,450.00, FUENTES-Negrete made contact with the undercover Task Force Officer again. During the contact, FUENTES-Negrete told the undercover Task Force Officer, through coded language, that she had acquired enough money to purchase three kilograms of cocaine. FUENTES-Negrete requested that the undercover Task Force Officer distribute five kilograms of cocaine to her. FUENTES-Negrete requested that she pay for the three kilograms she has money saved for, and that the undercover Task Force Officer front the additional two kilograms. The undercover Task Force Officer has agreed to distribute the five kilograms of cocaine to FUENTES-Negrete in the Dayton, Ohio area on or about July 17, 2018.

40. On July 11, 2018, Investigators conducted an additional trash pull at the **TARGET LOCATION**. Upon arrival at the Investigators observed the trash cans were placed at the curb in front of the **TARGET LOCATION**. Investigators then approached the **TARGET LOCATION**, and removed three white plastic bags from the trash cans. While searching the

bags Investigators observed several pieces of US Mail in the name of FUENTES-Negrete with the **TARGET LOCATION** as the listed address.

41. Investigators have conducted regular surveillance operations of FUENTES-Negrete, 1205 Heritage Drive, Troy, Ohio, and the **TARGET LOCATION**. Investigators have observed that FUENTES-Negrete and the GPS tracking location of FUENTES VEHICLE 1 visit 1205 Heritage Drive, Troy, Ohio and the **TARGET LOCATION** multiple times per week. Investigators have confirmed through surveillance operations that FUENTES-Negrete continues to utilize the **TARGET LOCATION** as her primary residence.

42. Affiant knows from his training and experience in drug investigations that drug traffickers often generate and maintain large amounts of U.S. currency, which are typically proceeds of narcotics trafficking. I also know that vehicles are often times used to conceal, transport, and distribute illegal narcotics and the proceeds of illegal narcotics. Your Affiant knows that drug traffickers use vehicles as a means of transportation to narcotics stash locations and distribution points.

43. Affiant knows from his training and experience in drug investigations that traffickers and money launderers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances and proceeds, to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances, and bulk currency.

44. It is also common for drug traffickers to use and maintain electronic devices in furtherance of their illegal activities, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. Drug traffickers commonly utilize telephones, both residential and cellular, computers, and electronic notebooks and tablets as a means of communication to conduct their illegal narcotics trafficking. Individuals and businesses involved in the illegal distribution of controlled substances often use computer equipment to document and track their business affairs, including their illicit sales and the disposition of the proceeds of their illicit sales. These items are commonly maintained in locations to which drug traffickers and money launderers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

45. It is common for drug traffickers and money launderers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, automobiles and other locations that they control; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

46. Affiant knows that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives,

8

associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

47. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession or in locations that they control.

48. Affiant is aware, based on his training and experience, that person engaged in drug trafficking rarely refer to cocaine or other illegal drugs by name; instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms.

49. Affiant is aware, based on his training and experience that when persons engaged in drug trafficking collect proceeds for the sale of illegal narcotics, they often attempt to legitimize or "launder" these profits through sources, including but not limited to, foreign and domestic banks and their attendant services, cashier's checks, money orders, wire transfers, bank drafts, and through businesses that they own or operate, or by acquiring assets.

50. There are many reasons why criminal offenders maintain evidence for long periods of time. The evidence may be innocuous at first glance (e.g. financial, credit card and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, check books, videotapes and photographs, utility records, ownership records, letters and notes, tax returns and financial records, telephone and pager bills, keys to safe deposit boxes, hardware and software computers), but have significance and relevance when considered in light of other evidence. The evidence may be highly valuable to the offender, and at the same time have great evidentiary value, such as valuable investments (e.g. art, jewelry, precious metals and stones, real estate, securities), large sums of currency, drug or money laundering ledgers, safes, customer lists, firearms, communications equipment, vehicles, airplanes, vessels, computers, counter surveillance equipment, scales and packaging material and equipment.

51. Affiant is aware, based on his training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

52. Based on the information above, your Affiant submits that there is probable cause to believe that FUENTES-Negrete and Boyd are involved in drug trafficking and money laundering. Based on the information above, your Affiant also submits that there is probable cause to believe that fruits, evidence and instrumentalities of this criminal conduct, as described more fully in Attachment B, exist within the **TARGET LOCATION**.

## CONCLUSION

53. Based upon the information contained in this affidavit, Affiant submits that there is probable cause to believe that FUENTES-Negrete, Cody Boyd, and others are involved in the distribution of controlled substances and a conspiracy to do the same, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and money laundering and conspiracy to do the same, in violation of 18 U.S.C. § 1956. Affiant submits that there is probable cause to believe evidence of those violations, along with the fruits and/or instrumentalities of those offenses, are located at the **TARGET LOCATION**, to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles of any kind located on or in the **TARGET LOCATION**.

_____
Austin M. Roseberry, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on July 16, 2018.

_____
Honorable Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PREMISES TO BE SEARCHED

**547 W. Franklin Street, Troy, Ohio** (**TARGET LOCATION**) is a single story, single family detached residence, which faces south toward Franklin Street. The parking area for the residence is located on the west side of the house, and is accessed by an alleyway that connects to Franklin Street. The front of the residence has a sidewalk leading to the front porch. The front porch is covered by an overhanging roof, and is bordered by a white handrail. The front door to the residence is located on the right/west side of the front porch. The door and siding of the house is an off white color. Directly to the left of the front door is a black mail slot. Directly above the mail slot are the numbers 547 depicted in black lettering. The premises to be searched includes all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings, and vehicles of any kind located on or in the TARGET LOCATION.

## ATTACHMENT B

## PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 1956, including, but not limited to:

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F. United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I. Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

J. Firearms and ammunition.